1744 The Board of Managers of Eleventh Street Loftominium Association Don't they know that they should stay for your argument? It's going to be really interesting. I don't think that he has the most interesting argument. All right. Did you call the case? You did call the case, right? Would you both step to the microphone and tell us your names? Good afternoon, Your Honor. It's Christopher Gavanari for the Appellant Board of Managers of Eleventh Street Loftominium Association. Good afternoon, Your Honor. Paul Esposito for McDonald Hopkins. And are you on this case also? Okay. All right. You both may know this microphone does not amplify. It only records, so keep your voices up loud so we can hear them and a few people in the back. You have 20 minutes. Do you want to reserve any of it for rebuttal? I would like to reserve five minutes, Your Honor. Okay. You don't have to take the whole 20? And are you going to be arguing, the only one arguing for yourself? Yes, Your Honor. Okay. All right. Whenever you are ready, counsel. May it please the Court, my name is Christopher Gavanari. I represent the Appellant Board of Managers of Eleventh Street Loftominium Association. The Appellant Court already has ruled in our favor on the same issue presented by this appeal. We filed suit in 2012. We brought claims against McDonald Hopkins for its own institutional negligence and for its attorney, John Jacoby's, negligence in allowing the underlying case to be dismissed for warrant of prosecution in February of 2010 and for failing to detect that DWP after it had been entered. In 2013, McDonald Hopkins moved to dismiss under Section 619. It argued it couldn't be liable because we terminated it in October 2010. We alleged as much in our complaint. We attached the letter by which we notified McDonald Hopkins that we were transferring the file to Mr. Jacoby's new law firm, Ryan Bambrick, in October of 2010 and saying we request that this letter formally terminate the retention between the Association and McDonald Hopkins. The circuit court denied the motion. In January, McDonald Hopkins appealed. The Appellant Court rejected McDonald's arguments that it couldn't be liable for legal malpractice simply because we had sent McDonald a letter in October 2010 terminating its retention. The Appellant Court said, we conclude that in this case, McDonald did not cease to be attorney of record at the time it was discharged by its client since it failed to properly file a motion to withdraw as attorney of record. And then in granted summary judgment, after remand, the circuit court failed to follow that Appellant Court September 11, 2014 order. The circuit court on McDonald's motion for summary judgment, McDonald repeated the same arguments it made unsuccessfully on its 619 motion to dismiss, but on remand, the circuit court said that we had to come forward with evidence that we had not terminated McDonald Hopkins. But that's completely contrary to the factual record that the Appellant Court based its previous record on. It's completely contrary to the allegations and theory of our case. I guess it doesn't matter, but why did it go to a different judge? Did just somebody retire it or? I think that. Or there was a mess of change exercised or? It stayed to the same calendar, but the judge that was assigned to that calendar changed. Okay. I believe that. It was Kirby in the. I believe Judge Kirby's on trial call now. He may be somewhere else. I don't know. But the call remained the same. It was before the same calendar on remand. Kirby was ever in commercial. All right. But he, Judge Kirby was the judge initially. He was. Yes. The first time. He was probably in motions at the time. It was before a commercial calendar then. I believe Judge Griffin. It's a lot longer life than. But regardless, that September 11, 2014 order of the appellate court is law of the case here. And it's not Judge Kirby's decision that we argue is law of the case. It's the appellate court's previous order that's the law of the case. Justice Fitzgerald Smith. Yes, riding on behalf of the panel. And law of the case applies to questions of law and fact. It encompasses issues explicitly decided as well as those decided by necessary implication on a prior appeal. And we set forth all of the reasons why law of the case applies both in our principle brief and in our reply brief. I believe that the first five pages of my reply brief really does a good job of setting forth the different aspects of the law of the case doctrine in response to an argument made by McDonald Hopkins that because Judge Kirby's order wasn't a final order, there couldn't be any law of the case. Well, that's a completely different aspect of the law of the case doctrine. We're talking about this court's prior order being law of the case. And it applies here further because McDonald Hopkins' duties exist as a matter of law. And that includes the duties that it has upon receiving an instruction from its client to withdraw from the representation in a litigation matter. We set through that in our briefing, and we presented that to the circuit court before, the appellate court before. So in your mind, does the failure to withdraw go to anything beyond an approximate cause? And is it because they didn't withdraw that there couldn't be a superseding cause? How does their failure to withdraw play out? Is there negligence on their part, or does it really go to approximate cause? I think it goes to the fact that they have a continuing duty. Their failure to withdraw is not the instance at which negligence occurred. The negligence occurred at the time they allowed the DWP to be entered, and when they failed to notify, well, they failed to detect the DWP and notify our client of that. The key to the failure to withdraw. But what authority would they have had to be able to go in and ask that the DWP be vacated when they have been terminated by the client? We're not saying that they did or that they should have. We are saying that had they did what the law required them to do upon receiving the notice of termination, the DWP would have been detected. And surely at that point, if you're a terminated attorney and you learn that the case that you just have been terminated from has been DWP'd for several months, surely you would be then duty-bound to pick up the phone and call somebody and say, hey, this case has been DWP'd, you need to do something. And had we been informed of the DWP in a timely manner, we could have taken proper steps to redress the harm that had been caused. But because they didn't follow the duties that the Supreme Court rules and the rules of professional conduct and the restatement of lawyers imposes upon them, we were robbed of that ability. As a matter of fact, you'd be given notice of the motion to withdraw. Not necessarily if the Rule 13 says the client has to be given notice. So you'd be given notice of the motion to withdraw. And so when that was happening, you wouldn't find out if it was DWP'd. Certainly when you go to file the motion in court, whoever brings the motion to withdraw the appearance is going to know the status of the case when that motion is brought. But with respect to notice, one of two things can happen. Either you do a substituted appearance, and Mr. Jacoby at his new firm is the other half of that motion, and I don't know that notice needs to be sent to the client individually for that type of motion. I believe the practice is that where there is a substituted appearance as part of the motion, the notice does not require the motion be sent to the client itself. There's separate notice requirements that I believe Supreme Court rules set forth. If you're just stepping out and leaving the client without any new attorney, I believe then you have to show that you sent it by certified mail, you got the return receipt, and you need to show that to the court, and then the court will enter an order giving your client a certain number of days to get a new attorney. I believe that's how Supreme Court Rule 12 reads. 13. 13. But when you have a substituted appearance, I believe those additional notice requirements are excused because the court is satisfied that somebody at that point is then going to be speaking on behalf of the client. But that isn't even what we're talking about here. We're talking about the failure in the transfer of the file for both sides to make sure that what needed to be done was done. So here we don't have a prior tort feasor and a subsequent tort feasor. Here we have, from the appellate court's decision and from September 11, 2014, we have two concurrent tort feasors given the fact that the duty continued. The failure to detect the DWP was a continuing act of negligence attributable to both McDonald-Hopkins institutional negligence and Mr. Jacobi's negligence while at Nyan-Bambrook and Nyan-Bambrook after Mr. Jacobi made his move. The development of the record following Rumand was wholly consistent with the prior record. We have Martin v. Federal Life Insurance where the appellate court has recognized that if the prior order is one on a motion to dismiss and then you Rumand and there's further proceedings and the case comes to summary judgment, the fact that the case has developed from a motion to dismiss to a motion for summary judgment doesn't rob the prior order of its law of the case effect. If that were the case, then there never would be any law of the case. Law of the case necessarily presupposes that there are going to be additional proceedings following Rumand like in this case and there's nothing different, nothing so significantly different following Rumand based upon what had been alleged on the prior record. The prior order was correctly decided because we know that proximate cause involves both cause in fact and legal cause. And here we have legal cause where a reasonable person in the defendant's position could foresee the plaintiff's injury as a likely result of the defendant's conduct. That's Hwang v. Brinson. In Bailey v. Swift, not every intervening act sufficiently insulates the initial wrongdoer from liability. The causal connection is not broken by such an act if the intervening act was itself foreseeable by the first wrongdoer. And here where you have the neglect of the file being perpetrated by Mr. Jacoby and he goes from McDonald Hopkins to 9 a.m. Bamberg, it's certainly foreseeable that his neglect of the file is going to continue and that the DWP is not going to be detected. So McDonald's own duty to take the transfer of the file to Mr. Jacoby at his new firm and do that in conjunction with the requirements of Supreme Court rule and the rules of professional conduct and the restatement of lawyers show this is the perfect illustration of why these rules and why these standards exist because otherwise this is not something that just happened once. It's something that is reasonably foreseeable to happen again. And that's why you need to impose upon the departing law firm as well as upon the incoming law firm the duty to do what the Supreme Court rule and the restatement of the rules of professional conduct say they need to do. I think that we set forth in our reply brief a good and complete rebuttal of McDonald Hopkins' final last-ditch effort regarding the release of Mr. Jacoby. That release only extended to Mr. Jacoby while at 9 a.m. Bamberg. It did not extend to him while employed by McDonald Hopkins. So this isn't the case where there is only respondee at superior liability which has been released. And I think that we set forth the reasons why that is the case in our reply brief. If the panel has any further questions regarding our positions, I'm happy to answer them or address them with you. So you haven't even gotten to the merits of the underlying case? I'm happy to address that. No, no, no. I'm just saying if we were to reverse, you would have to go back and show that you had a meritorious underlying case that got dismissed through their negligence. Yes, I agree with that, Your Honor. There would be a trialable issue of fact for the jury there on an aspect of the proximate cause of the legal malpractice here. It's the case within the case. And the cases say that even where one of the underlying claims for relief was a breach of fiduciary duty where if that had been a stand-alone claim, that would be a factual issue to be decided by a judge because you don't have a constitutional right to trial by jury for breach of fiduciary duty. But that becomes embedded within the law of the case. That becomes embedded within the case within the case here. And it's an aspect of the proximate cause of our legal malpractice cause of action. In our legal malpractice, we do have a constitutional right to trial by jury. So all of those issues regarding breach, damages, proximate cause for the case within the case, the trial is to a jury on remand. Now, I do understand that at the time of McDonnell Hopkins' summary judgment, we had a fully briefed motion for summary judgment that had been filed by Nye and Bambrick. We settled with Nye and Bambrick at the time that motion was to be heard. McDonnell Hopkins had joined in that motion. But we're not able to go through a weighing of the evidence here, nor would it be proper because that's summary judgment. And the weighing of the evidence is to be done by the trial of fact. We set forth in our second supplemental record for the court's information the brief in opposition to Nye and Bambrick's motion for summary judgment below that McDonnell Hopkins had joined in. So we set forth sufficient evidence of the breaches of fiduciary duty by the individual defendants in the underlying case, how they breached their fiduciary duties. So you've already taken discovery on that? Yes. Judge Brennan oversaw discovery following remand that extended to the case within the case. We had the individual defendants in the underlying case, the case that was DWP'd. They sat for deposition. We took their testimony. There was written discovery regarding documents from the conversion and testimony given by people who were involved in it as well as representatives from my condominium association. I'm just trying to understand procedurally where you are if we were to reverse. It was a case where there was a hearing on a fairly brief motion for summary judgment, but we were also due to go to trial in a matter of days. Your honors may know from looking at the record that there were motions in limine and a trial refiled. So everything had been done. We had 213 F1, F2, F3 disclosures. So, yeah, I mean, I think that we're ready to try the case on the underlying issues following a remand by this court if that's what your honors are inclined to do, and I believe that that's what this court should do. Sure. Can you quickly respond, though, to their argument that by releasing Jacoby, the agent, that you've in essence released McDonald? There was a release pursuant to the settlement agreement. Yes, because we did not release him as agent for anything where it was principal. So if you have a person who has different agency relationships with different principals, the rule is that if you release the agent, you are therefore releasing the principal for the vicarious liability that that principal otherwise would owe for that agent to the extent that that agent is being released. But here we've got one man who has separate agency relationships with two different law firms, one at one point in time and another at another point in time. And I think that we point out the closest case that I could find was the Buckles case that I cited to an out-of-apply brief, and I think it addresses this in a slightly different factual context. Basically what it says is when you have attorneys who are going from one shop to another shop, a release of liability while you're in one status will govern to the extent that we're talking about your employment within that one firm. So we've released Nyhan Bamberg and Mr. Jacoby, and we released Mr. Jacoby only for his conduct while at Nyhan Bamberg. We did not release Mr. Jacoby for his conduct while at McDonald Hopkins, and that's important for two reasons. One, McDonald Hopkins remains liable for the negligence that occurred while Mr. Jacoby was employed by it. Second, after Mr. Jacoby leaves McDonald Hopkins, as the appellate court previously recognized, McDonald Hopkins remained attorney of record, so it had its own continuing duty to put into practice its withdrawal under Supreme Court 12, which it failed to do. That's on McDonald Hopkins itself. That is its own institutional negligence. That is its own failure. So even if Mr. Jacoby is released from acts on remissions related to his employment relationship with Nyhan Bamberg at that time, it doesn't get McDonald Hopkins off the hook for its own institutional failures in October 2010 to put into practice what the appellate court said it had to do and failed to do.  Thank you. I'm Paul Esposito from McDonald Hopkins. I think to understand this case in its present posture, it's really important to understand what happened at the time of the Rule 23 order, and that really requires us to go back all the way to the beginning to Plaintiff's malpractice complaint. We can just state that briefly. Plaintiff alleged that we failed to do the proper things so that the lawsuit that had been filed, that had been DWP'd, could be reinstated. They also alleged that you caused it to be DWP'd, correct? He did. Certainly. He did allege that. But said that it was our negligence, our professional negligence, that allowed the case to be DWP'd and also prevented the case from being reinstated. The question that was certified by Judge Kirby was the question that dealt with reinstating. You can read that in the Rule 23 order. It talked about what happens when the case is DWP'd and about reinstatement. I don't need to read it to the court. The court has it in front of it. The appellate court, and this is very significant, said we are limiting our analysis to that question. You can go to Paragraph 2 of the Rule 23 order. You can go to Paragraph 13 of the Rule 23 order, and you will see that statement. So there is a very limited decision in the first case. It's really important that that distinction be appreciated. What the appellate court was saying was that, look at McDonald, you didn't withdraw from the case. So you weren't really dealing with a successor counsel situation in that case. You were still the counsel of record in the case, and so you should have been doing steps so the case could be reinstated. The court recommends that there is a viability doctrine. The court simply said it doesn't apply in that case. Now the case gets remanded. We go forward. That case, of course, was decided on the pleadings. Counsel talks about a factual record, but the only factual record at the time of the Rule 23 order was his complaint. Now we get to discovery. In discovery, the head of the board of managers, the director, David Dye, gets in that position, and he testifies, yes, we discharged McDonald Hopkins on October 22nd. The board, at that point, they had no authority to act on behalf of the board, and at that point there was no expectation that they would act on behalf of the board. My withdrawal is different than acting on behalf of the board. Right, and I agree, and this court ruled on that issue. We're not here trying to fight that issue in any way. The court has ruled on the issue. The question then comes, because their experts also testified, their two experts also testified, and their experts testified that at the time of the discharge, the case remained viable. And how did it remain viable? It remained viable because successor counsel at that point could have refiled a new lawsuit or could have filed a new lawsuit, a new case pursuant to Section 13-217. At that point, the questions about withdrawal are meaningless. Rule 13, the professional rule of responsibility, we state in third, they have nothing to do with a refiled case because those deal with withdrawal. We're not seeking, we're not saying anything about the withdrawal. We're saying successor counsel had the ability to go and file a new case. That's what the viability doctrine. But you said the DWP couldn't be vacated? The DWP could have been vacated within one year, but that's not what the viability doctrine talks about. The viability doctrine recognizes, okay, first counsel, you may have been negligent, but could the case still have been saved? That's what viability is about. It's the cases we cited in our brief, and if you go to the Rule 23 order itself, the court recognizes in talking about the viability doctrine that, yes, the first firm may have been negligent, but the question is, could the case have been saved? And the court says that principle is a valid principle of law. It just didn't apply in the withdrawal situation. So what are the facts? That all experts say that this case could have been, was still viable, that the claims that they had against the construction defendant could still have been raised if the successor counsel had taken action. He had four or five months to do so. I'm sorry. I'm reading the Rule 23, and the question is whether it's superseded and extinguished by plaintiff's termination of counsel. That's your termination of them. I'm sorry, their termination of me. Right. So that's the presumption of the Rule 23, of the first. Decision is that you've been terminated. That's the assumption, right? Right. The argument we were making on appeal in the first case is, we're out of the case. We got fired. We don't have anything more to do. Right. The appellate court said, no, because you didn't withdraw, you're still counsel in that case. Right. But now, on appeal now, we're talking about the fact that successor counsel could have filed a brand new case. Under Section 13-217, it's a new case. Okay. And as to that new case, the questions of withdrawal don't have anything to do with it because it's a new case. There's no, we weren't in it. But they didn't know that the old case had been DWP. That's why they didn't file a new case. Whether they reinstate the old case or file a new case, they didn't know about it, and they would have known had you withdrawn. That's his argument. And there is this argument. Right. But the successor liability, the viability rule, excuse me, the viability rule assumes that the first law firm was negligent. There's an assumption there. The point of the viability rule is even though the first firm was negligent, the second firm had time to save the situation and didn't. It's but-for-causation. Okay. And that's where you lose me. Why? The law of the case in this case is we don't need but-for-causation. That's what Justice Smith said. We don't need but-for-causation. We could have multiple causes. And we find multiple causes. That's exactly what he said, isn't it? The Supreme Court of the United States. I'm trying to get back. This law of the case, this case is we don't need but-for-causation. But you do. So is your argument that he's palpably erroneous? Is that your argument? On that point, yes. Yes. Okay. Okay. And that point is. Because he is quite clear, and that is the law of the case unless there's an exception to it, that you can both have liability. Your Honor, I think the exception to any case is that if a higher court says something that differs from the lower court, it's the higher court that. Yeah, but there's no higher court in this case. No higher court has taken your case. But the Supreme Court. But he was. You're saying he's wrong because he's inconsistent with the Supreme Court decision. That's what you're saying. Oh, sure. Okay. This is not a higher court has taken your case. That's with that exception. Yes, but then the whatever the court is, it's got to follow the law set by the Supreme Court. Right. Well, or. I'm sorry, Judge. I think Justice McBrayer is correct. Because the only time that that exception would apply would have to be a situation where a higher court has addressed that issue head on. It could be. What you're arguing is that it could be a different case. I think you may be right about that. It would have to be addressing the issue head on. And it would have to be after the appellate court has ruled and sent it back to the trial court and made it the law in the case. That didn't happen here. Well, go back to look at the Rule 20 of the order. I've already read the Rule 20. I know. I'm just talking, you know. But I think the Supreme Court has it correct. I'm sorry, Judge. The appellate court in the Rule 23 order didn't cite the cases that the Supreme Court has talked about. What you need to plead and prove in an attorney malpractice case. And what you need to plead and prove is but for a causation, but for the negligence of McDonald Hopkins. Could the plaintiff have pursued a claim against the defendants they wanted to pursue? Whether they won or not, only a jury can say at some point in the future. But could they have pursued that case? And the answer is yes, they could. Yes, of course they could. We all understand that. But he doesn't pursue that. I still don't. The DWP could have been vacated. The DWP could have been vacated. But there are other options that were available to the successor attorneys that would have saved the case. And that's what the law looks for. Right. Isn't there a fact question? If you filed a motion to withdraw, you'd be given notice to everybody. Presumably the other side would say let's do a stipulation. I'm sorry, substitution and withdrawal. But presumably it would get discovered that it was DWP. If it wasn't discovered and the case went on, there's the revestment principle. Either way, the case is viable if you filed the motion to withdraw. But because you didn't, then we are where we are. Well, there's no question that there can be an argument made as to whether McDonald's was negligent because it allowed the case to get DWPed and didn't catch it. Okay.  To get to liability, you've got to go further. You've now got to cross the proximate cause element. And crossing the proximate cause element brings you head into the viability rule, which says could these successor attorneys have saved the case. That's the law. Okay. So going back to law, the case in Justice Walker's question, has there been a Supreme Court case subsequent to Justice Fitzgerald Smith's case which says but for causation, that's what you have to do in a legal malpractice case? I believe so. And what's the Supreme Court case? Subsequent to Justice — is there at least you rely on the subsequent to Justice Smith's case? We were — let's see, this case — It was decided in 2014. 2014. Okay. I'll get there. Well, Ferris v. Stay Lunch, 2014, 115997. That was the case. I'm looking at that. I'm looking at that. Okay. So you're saying that came after Smith's case and it's inconsistent with Smith's? I can't tell you right now because I don't see the date, General, whether it came before or after. It came the same year. That's the best I can say to you. And then the cases that I've listed on page 19 that were cited in our brief but not cited by the appellate court. I think there's a real lie here that in our palpably erroneous analysis that the court missed, that the court was trying to say that you don't have to show but-for causation. That is wrong under the body of case law. And under the but-for test, you win because the case remained viable. That's your argument? That is our argument. Okay. Yes, it is right. He applied the wrong test. The case was viable. It can't be the but-for cause. I mean, it's part of that simple case. Here's what I'm saying. We're not saying that the court was wrong in the sense that the court said something wrong about the failure to reinstate the case. Again, the court wasn't dealing with the question of viability. It's a look at you guys, McDonald. You didn't withdraw. You were supposed to withdraw from the case even though it had been DWP'd. You didn't withdraw from the case. So you're still constantly a record in the case. That's why by then you didn't withdraw. That's exactly the argument that the other side is making. It's also the position taken by this court previously that because you didn't withdraw, you still had an obligation to do something. Right. So, therefore, I don't know how you win on the but-for test. You win because you have an obligation. But-for, you doing something or not doing anything, this wouldn't have happened. You win on the but-for test, Rainer, because there's a big difference between reinstatement and refiling a lawsuit. To refile a lawsuit, you need a clear decision. A simple motion to vacate the DWP. Pardon me? A simple motion to vacate the DWP. That would probably always be an attorney's obligation if an attorney was on a case, and that attorney was responsible for having the DWP entered in the first place. Even if I had withdrawn from the case, I would have went right in to get that DWP vacated. See- Isn't that just- Respectfully, Your Honor, you're stopping at the issue of negligence. You're not going forward to the issue of proximate cause. That's-and to make a claim of legal malpractice, we've got to hear them all. We've got to get to proximate. We've got to get to proximate cause, too. And that's where they fail because they could-the successor counsel could have filed a new lawsuit, and that would have preserved every single one of their claims, allowed their claims to go forward to whatever end they'll ultimately find themselves. That's-I think that's where we're different. We had no authority, clearly, from what Mr. Dye testified. I don't know if it is that position. We had no authority to do anything in terms of filing a new lawsuit. But if the law imposes us a duty to vacate the DWP-excuse me-to withdraw, that's one thing. But only a client can tell you that you can go ahead and file a lawsuit. And this client, this former client, told us you had no authority to do anything for us. But the client didn't even know that the case had been DWP'd. No, the client didn't know. That was our negligence. That was it. The negligence that they're claiming, that would be the evidence of their claim. So the client has a misdiscrepancy question then. Had you gone in and withdrawn from the case, you would have gone in with the DWP. And representing the client or not, you surely would have advised the client, by the way, your case has been DWP'd. Most likely, arguably, yes. I'm pretty sure you can withdraw from a DWP'd case. It would be wrong to reinstate the case. And that, while you argue that you had no authority to do anything, I think you had not only authority, a direction from the client to withdraw from the case. The will of the client. You argue about how that would be against the will of the client. The client said you're done. The client didn't say anything about it. The next part of withdrawal is to get out. That's the point. Right, right. That is the will of the client. And Jacoby was taken over. Jacoby being the former guy was taken over the case when he went to Nyhan. And that part of it didn't get done. No question about that. I mean, that's the facts. It didn't get done. The next question is, could plaintiff's case still have survived all of that? That's the proximate cause question. That's the but-for question. Could it have survived all of that if we assume, for sake of argument, that everything we did back then was negligent? Could it have survived all of that? That's what but-for, causation, and viability rule is all about. And that's what the case is supposed to be. If you go back and look at this case, Mitchell versus Shane, Frizzell, and Burney, it's not in our briefs, but I think that is the case, Your Honor, that you will find most closely applicable, factually applicable to that case, because it involved a DWP. Anything else? That's it. Your Honor, as to the release issue, I stand on the briefs on that. I think, you know. Do you dispute that the release was asked to Jacoby for his conduct at Nyhan? It's the same conduct that was involved in our case. Yeah, the same conduct that was involved with here, you know, and with Nyhan. He didn't follow the case. I mean, that's the allegation. He didn't follow the case. But do you dispute their description of the release? I don't remember if the release is in the record. Is the release in the record? No, I think the release says that, and not disputing it, I think the release says it releases conduct on or after November 1. I think that's the date. Which coincides with the day that he started at the new firm. Okay. We understand that basically he was always our agent. They released him for the same conduct. We're out. Thank you, Your Honor. Thank you, Your Honors. A few points, and I'll be brief. Yes, the release is not in the record. When we appeared before Judge Brennan for the good faith finding and informed her of the settlement, we notified her of the scope that the release would take. And so the release document itself is not in the record, but I set forth in our reply brief its scope. And he doesn't dispute that. I don't think there's any dispute about that. The argument was made on the prior appeal, too, that there's some distinction to be made between moving to vacate the DWP in the current numbered case and filing a new case. But the appellate court in its prior order treats those two as being functionally the same thing for purposes of what we could have done had we been apprised of our DWP. You have a year to do something. It's paragraph 8. The parties agree that as of October 22, 2010, Nyhan and Jacoby had four months within which to file a new action on behalf of the association pursuant to Section 13-217 of the Illinois Code of Civil Procedure. The argument seems to be that we cannot treat this statement by the appellate court in its prior order as meaning anything because McDonnell-Hopkins more narrowly drew its question for certification on appeal to address only the reinstatement of the currently numbered case. But the larger case goes to everything that was explicitly decided and everything that was decided by necessary implication. You know, 308, I mean, you come up with the law of 308 of interlocutory appeals, which are to be construed as only answering the question presented. That is true, but then the court goes and says what it says in paragraph 8. The court is not drawing any distinction for purposes of what was before it between what continuing duty they owed for purposes of what remedial action we could take. The fact remains that because they did not withdraw, they had continuing duty owed to the association. They were not predecessor counsel. They were concocted tortfeasors. What we could have done to remedy our situation had we been adequately notified of the DWP is separate and apart from the negligence from the proximate cause of the harm and from the harm not to suffer. Can you briefly address his, that Justice Smith got it wrong, that it's got to be in this context but for a causation, and you were not the but-for cause, or they were not the but-for cause? I agree with Justice Walker. I think that, first of all, I don't think that it has to be but-for. It can be substantial factor, and I think substantial factor makes more sense ordinarily when you're talking about multiple tortfeasors and concurrent tortfeasors like you are here. But I agree with Justice Walker also because I think that under a but-for formulation, we also prevail because but-for their failure to do what was required of them, we would not have been harmed because we would have been alerted to the DWP, and we then could have taken whatever remedial action we chose. Yes, as Justice Griffin keeps pointing out, we could have moved to vacate the DWP in the currently numbered case. Yes, as they keep pointing out, and as the appellate court pointed out on a prior error, we could have filed a new action under the savings statute, but we would never give them an opportunity to do either of those things because of their failure, because of their negligence. He keeps talking about a viability doctrine, a viability rule, but the prior order talks about that also. There is no viability doctrine. There is no viability rule. There is no bright-line rule. There are some cases that are decided as a matter of law on the factual record set before them, and Mitchell was one of them, but the prior order says proximate cause itself is a question of fact, but duty is a question of law. Here, the duty continued because they never withdrew, so they continue to owe a duty as a matter of law. There's no way that they can get around that by talking about a doctrine or a rule that doesn't really exist. We distinguish, well, actually, we correct their misstatement of the holding of Harris v. Wunsch at page 15 of our reply brief. Harris never considered the substantial factor test. It never rejected its application to legal malpractice actions. There is no intervening Supreme Court authority that would provide an exception to the law of the case doctrine, and the prior order certainly is not palpably erroneous, given everything that we set forth in our briefing, which is significantly similar to what we set forth in our briefing on the prior appeal, and the reason for that is because following Wunsch, and even though the case got fleshed out, certainly with respect to the case within the case, the allegations, for purposes of what issue we're talking about here in our complaint, are the same relevant facts that established the duty, and Justice Brennan, for whatever reason, she got it backwards. She's a judge. You called her a justice. And I think that the court is right. I don't know whether the circuit court would take a motion for me to withdraw an appearance on a case where there was a DWP, but it hadn't gone for a year, because you could move to vacate. The case isn't final within that first year. I don't know whether you could go in on that current numbered case, or whether you would have to file a new case. I don't know how the clerk in the court would act. But the relevant fact here is that they didn't attempt, they didn't seek to withdraw their appearance. They tried to make an argument elsewhere that, well, because the court would have been closed to them, because of the DWP, they wouldn't have been able to withdraw their appearance, so therefore they were absolved of their failure to try to do so. But if they had only tried to do so, we would have known about it, we would have been able to take proper remedial action, we wouldn't have been harmed. So there's no reason why this – I'm sorry, I'm happy to appear before you today, but we shouldn't be here. The case should not have been disposed of the way it was with summary judgment entered in favor of Donald Hopkins. You asked to be here. Yes, Judge Brennan should have followed this Court's prior order, and we should have tried the case back in 2014 and already have moved on to other things. And I'd certainly like the opportunity to do it now with this Court's blessing and graces. Thank you. Thank you all. All right, you will hear from us shortly. And I believe there's one more case.